SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
JILL M. PIETRINI (Cal. Bar No. 138335)
    jpietrini@sheppardmullin.com
PAUL A. BOST (Cal. Bar No. 261531)
    pbost@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:   (310) 228-3700
Facsimile:    (310) 228-3701

CHRIS PONDER (Cal Bar. 296546)
    cponder@sheppardmullin.com
379 Lytton Avenue
Palo Alto, California 94301
Telephone:   (650) 815-2676
Facsimile:    (650) 815-2601

Attorneys for Plaintiff
WARGAMING.NET LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WARGAMING.NET LIMITED, a Cyprus limited company,<br><br>    Plaintiff,<br><br>  v.<br><br>BLITZTEAM LLC, a Belarus limited liability company; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 2:20-cv-2763<br><br>**COMPLAINT FOR:**<br><br>(1)**TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114;**<br><br>(2)**FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**<br><br>(3)**COMMON LAW TRADEMARK INFRINGEMENT;**<br><br>(4)**UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.;**<br><br>(5)**COMMON LAW UNFAIR COMPETITION; AND**<br><br>(6)**CANCELLATION OF TRADEMARK APPLICATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Wargaming.net Limited ("Plaintiff") hereby files its complaint against defendants Blitz Team LLC ("Blitz Team") and Does 1-10 (collectively referred to as "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a trademark infringement action against a company formed by former employees of Plaintiff, who are now trading on the goodwill associated with Plaintiff's popular mobile computer games WORLD OF TANKS BLITZ and WORLD OF WARSHIPS BLITZ.

2.      Defendants worked for Plaintiff in its WORLD OF TANKS BLITZ ("WOTB") product group and were known as "The Blitz Team" amongst Plaintiff's employees and management and by the community of international computer programmers that develop game properties.

3.      Until just before Defendants' separation from Wargaming, the WOTB product group was led by Andrei Karpiuk, Vitali Baradouski, Stsiapan Drozd, and Dzimitry Babraunichy (hereinafter "DAVA Individuals").  The DAVA Individuals were afforded a high-level of autonomy to manage the WOTB product group and were richly compensated for their efforts.  In addition to ordinary employment compensation, the DAVA Individuals received additional payments exceeding $10,000,000, which included a share of WOTB's net revenue.

4.      In April 2017, the DAVA Individuals announced that they intended to leave Plaintiff to start their own video game company.  The DAVA Individuals and Plaintiff parted ways in April 2018 after a year of failed negotiations for a new business arrangement.  Within days, Defendants formed a new company called "BlitzTeam LLC," and hired away over thirty of Plaintiff's employees.  Defendants are now using various BLITZ trademarks for mobile computer games.

## JURISDICTION

5.      This action arises under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.*, and under the statutory and common law of unfair

competition.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b), and § 1367, and 15 U.S.C. § 1121.

6.      Venue is proper under 28 U.S.C. §§ 1391(b) and (c) in this case because, on information and belief, Defendants are subject to personal jurisdiction in this District and/or a substantial part of the events or omissions giving rise to the instant claims occurred in this District.

**PARTIES**

7.      Plaintiff is a Cyprus limited company, having its principal place of business in Nicosia, Cyprus, with United States offices in Austin, TX, Bellevue, WA and Chicago, IL.  Plaintiff is actively engaged in business in the U.S.  For example, Plaintiff has held game competitions in New York under the name Blitz Twister Cup, promoted the 2017 Mobile Masters tournament in Las Vegas, Nevada and 2018 tournament in Seattle, Washington, and engaged in various promotions and hired a U.S. public relations company in order to target U.S. consumers.

8.      On information and belief, Blitz Team is a Belarusian limited liability company, having its principal place of business in Minsk, Belarus, and does not have a regular and established place of business in the United States.  As described below in Paragraphs 14, Defendants distribute their BATTLE PRIME game and related apps on Google Play and Apple App Store to customers and end users in this District and the United States, and Defendants' own websites (www.battleprime.com and www.blitzteam.com) are directed to end users in the United States.  As described below in Paragraph 66, Defendants retained counsel in this District for the purpose of sending a letter warning Plaintiff against interfering with its business in the United States.

9.      Plaintiffs and Defendants are subject to personal jurisdiction in this District because  the claims arose in this District in that many of Plaintiff's customers and end users of its BLITZ games are located in this District, and Defendants customers and end users of its BATTLE PRIME game are located in

1   this District.

2       10.   The true names, identities and capacities, whether individual, associate,

3   corporate or otherwise, of Defendants DOES 1 to 10, inclusive, and each of them

4   ("the DOE Defendants"), are unknown to Plaintiff at this time, who therefore sues

5   the DOE Defendants by such fictitious names.  When the true names and capacities

6   or participation of the DOE Defendants are ascertained, Plaintiff will amend this

7   complaint to assert the true names, identities and capacities.  Plaintiff is informed

8   and believes and thereon alleges that each of the DOE Defendants sued herein is

9   responsible for the wrongful acts alleged herein, and is therefore liable to Plaintiff

10  in some manner for the events and happenings alleged in this complaint.  Plaintiff is

11  informed and believes and thereon alleges that at all times herein mentioned, the

12  DOE Defendants were and are doing business and/or residing in this District.

13                    **PLAINTIFF'S BUSINESS AND TRADEMARKS**

14      11.   Plaintiff is recognized internationally as one of the leading developers

15  and publishers of multiplayer online video games that are built upon a "freemium"

16  business model.  Under the "freemium" business model, games are free-to-play, but

17  participants also have the option of paying a fee for use of "premium" features.

18  Such premium features may be purchased through Plaintiff's own online store

19  located at <https://na.wargaming.net/shop/.>

20      12.   Plaintiff develops video games for Windows and Mac computers, as

21  well as for mobile devices such as mobile phones and tablets, both Android and

22  Apple devices.

23      13.   Currently seven of Plaintiff's video games are on the market, which

24  collectively have more than 332,000,000 registered players worldwide.  Attached as

25  **Exhibit A** are true and correct copies of extracts from Plaintiff's websites

26  <Wargaming.com> and <Wargaming.net>, as well as Plaintiff's online shop.

27      14.   Plaintiff's video games are distributed and made available to

28  consumers in the United States and worldwide through Wargaming Game Center,

the video game digital distribution service "Steam" operated by Valve Corporation, mobile app platforms such as Google Play (for Android devices) and App Store (for Apple iOS devices), and on such consoles as Xbox 360, Xbox One, and PlayStation 4.

### WORLD OF TANKS BLITZ GAME

15.    One of Plaintiff's video games is WORLD OF TANKS, which was initially launched in 2009.  It focuses on player vs. player gameplay with each player controlling an armored vehicle.  The WORLD OF TANKS game was very successful, and versions of it were later released for play on multiple gaming consoles, such as PlayStation 4, Xbox 360, and Xbox One.

16.    In 2013, Plaintiff expanded its WORLD OF TANKS game with the announcement of **WORLD OF TANKS BLITZ**, a mobile game for tablets and smartphones using Windows 10, Android, and iOS.  The WORLD OF TANKS BLITZ game was released (on iOS only) on May 2014 in Europe and on June 27, 2014 in North America (again, on iOS only).  The Android version of the WORLD OF TANKS BLITZ game was released worldwide on December 4, 2014. And the Windows 10 version of the WORLD OF TANKS BLITZ game was released in the Windows Store on December 28, 2015.  On November 9, 2016, the PC version of the WORLD OF TANKS BLITZ game was also released on Valve Corporation's Steam, a video game digital distribution service, separately from the standard PC version of the WORLD OF TANKS game, which is also available on Steam.  Although the WORLD OF TANKS BLITZ game is based on the WORLD OF TANKS game, it is a different game with different game sessions.

17.    Plaintiff's WORLD OF TANKS BLITZ game was developed by a team of computer programmers working within the Wargaming Group that came to be known as "The Blitz Team."  The Wargaming Group is a group of affiliates of Plaintiff, including, without limitation, Wargaming World Limited, Wargaming.net Limited, and Game Stream JLLC.  Attached hereto as **Exhibit B** are true and

correct copies of relevant screenshot extracts from Plaintiff's Facebook Workplace platform, showing the use of the term "Blitz Team."

18.     Plaintiff's WORLD OF TANKS BLITZ game has been a huge success amongst gamers across the United States and worldwide, and is a well-known, if not famous, trademark by reason of its extensive use and reputation.

19.     Since its launch in 2014 and up until today, there have been more than 20 million downloads of the WORLD OF TANKS BLITZ game, generating millions of dollars in revenue.  On average, there are 300,000 monthly active users of the game in the United States.

20.     According to Newzoo, the world's leading provider of market intelligence covering the global games, esports, and mobile markets (www.newzoo.com), Plaintiff is the 7th highest grossing mobile game publisher in Eastern Europe.

21.     The popularity and the success of the WORLD OF TANKS BLITZ game is demonstrated by the significant number of installs the game has had in the United States over the last few years.  In 2014, the game was downloaded nearly 1.1. million times in the U.S.; in 2015, more than 1.3 million downloads; in 2016, more than 1.35 million downloads; in 2017, more than 950,000 downloads; in 2018, almost 800,000 downloads; and in 2019, more than 800,000 downloads.  In the United States, as of January 2020, it is estimated that there are more than 242,000 monthly active users of the WORLD OF TANKS BLITZ game.  At times, there have been more than 400,000 monthly active users of the game.

22.     Due to the popularity of the WORLD OF TANKS BLITZ game, the game is commonly known and referred to as BLITZ.

23.     Since the release of WORLD OF TANKS BLITZ game, Plaintiff has incurred (and continue to incur) significant promotional, marketing and advertising expenses to establish, maintain and further enhance the reputation of its trademark WORLD OF TANKS BLITZ and for Plaintiff's common rights to the name BLITZ

1  as a standalone trademark to identify certain of its mobile video games.

2      24.    Plaintiff has held and sponsored special events, published print

3  advertisements, engaged athletes as partners, engaged internet influencers, and

4  sponsored game competitions, all promoting, marketing, and advertising the

5  WORLD OF TANKS BLITZ and BLITZ trademarks in the United States.  One of

6  the most significant promotional and marketing events is the Blitz Twister Cup,

7  which has been running successfully for the past four years.  The Blitz Twister Cup

8  is an international gaming tournament centered around the WORLD OF TANKS

9  BLITZ game, and other Plaintiff's BLITZ games (*see infra*), with various teams

10 from around the globe who compete for a cash prize.  The Blitz Twister Cup is

11 considered the final of the international tournament since teams need to complete

12 the preliminary rounds in order to compete in the Blitz Twister Cup.  In the 2018

13 Blitz Twister Cup preliminaries, more than 600 teams competed for a ticket to the

14 final.  The Blitz Twister Cup is streamed and broadcasted with thousands of people

15 watching the progression of their team in the tournament.  In November 2019, six

16 teams from around the world participated in the Blitz Twister Cup final.  In total,

17 223 websites with an online readership of 3.64 billion people covered the 2019

18 Blitz Twister Cup, with an estimate of 27 million views.

19     25.    Plaintiff has also promoted its WORLD OF TANKS BLITZ and

20 BLITZ trademarks on social media, including collaborating with various

21 YouTubers and content creators for the promotion of the WORLD OF TANKS

22 BLITZ video game platform in June 2019.  YouTubers Younes Jones, who has a

23 following of 1.1 million subscribers, AviveHD with 1.62 million subscribers,

24 Simon Desue with 4.4 million subscribers, and JuniorTVLife with 1.07 million

25 subscribers, created videos which depicted their experience playing the WORLD

26 OF TANKS BLITZ game.

27     26.    In order to further promote the WORLD OF TANKS BLITZ game,

28 Plaintiff has also initiated a merchandise collaboration with the well-known custom

clothing website Spreadshirt.com.  The collaboration enables fans and users of the gaming platform to acquire their favorite merchandise bearing the WORLD OF TANKS BLITZ trademark, such as t-shirts, hoodies, and mugs.  The collaboration is accessible to all, with products created for men, women, and children and with more than 25 different styles for each category.

27.     Since its launch, Plaintiff's WORLD OF TANKS BLITZ game has received numerous awards and nominations worldwide.  For example, the WORLD OF TANKS BLITZ game was recently nominated by Pocket Gamer for "Best Mobile Esport" for the year 2020, which is an annual award recognizing and celebrating the most impressively implemented and strategically sustained mobile e-sport experience of the relevant year.  The "Best Mobile Esport" award, together with other video game awards, collectively known as "The Pocket Gamer Mobile Games Awards," are amongst the most prestigious awards in the video game industry.

### WORLD OF WARSHIPS BLITZ GAME

28.     Another well-known video game developed and published by Plaintiff is the game WORLD OF WARSHIPS, a free-to-play naval warfare-themed Massively Multiplayer Online ("MMO") video game.  The WORLD OF WARSHIPS game was released worldwide in September 2015.

29.     In 2018, Plaintiff expanded globally WORLD OF WARSHIPS to mobile platforms with the announcement of WORLD OF WARSHIPS BLITZ, a mobile version of WORLD OF WARSHIPS for tablets and smartphones using Windows 10, Android, and iOS.  The WORLD OF WARSHIPS BLITZ game is a free-to-play mobile action MMO that plunges users into intense naval combat of the first half of the 20th century.

30.     On July 14, 2017, Plaintiff completed a beta/soft launch of the WORLD OF WARSHIPS BLITZ mobile video game, and on January 17, 2018, the game was launched globally.  Since its launch, the WORLD OF WARSHIPS

BLITZ game has been a huge success amongst gamers in the United States and worldwide and has acquired the status of a famous, or at least well-known, trademark by reason of its extensive use and reputation.

31. Since its launch in January 2018 and up until today, there have been more than 16.84 million downloads of the WORLD OF WARSHIPS BLITZ game. Each month, there are approximately one million users actively playing the game.

32. Since adopting and using the trademark WORLD OF WARSHIPS BLITZ and BLITZ to identify certain of Plaintiff's mobile video games, Plaintiff has incurred (and continues to incur) significant amounts in promotional, marketing, and advertising expenses to establish and maintain the reputation of the WORLD OF WARSHIPS BLITZ trademark and Plaintiff's common law rights to the name BLITZ.

33. Examples of Plaintiff's marketing, promotional, and advertising efforts for its WORLD OF WARSHIPS BLITZ video game include co-operation agreements, merchandise agreements, publications, organizing of specific events, print advertisements, and social media.  Plaintiff has specifically targeted consumers in the United States as part of its marketing efforts.  For example, as part of a special event called "Victory Blitz," Plaintiff joined forces with professional hockey player, Stanley Cup winner, and three-times world champion Alexander Ovechkin of the Washington Capitals NHL team.  During the limited time period that this version of the game was available, the players had the opportunity to participate in a certain number of battles that enabled them to bring "Ovi" (aka Alexander Ovechkin) aboard.  The players were able to choose between different versions of the Ovechkin avatar, to pick ice hockey-themed camo that could be applied to the American Tier VIII battleship Alabama, and to add Ovechkin as a commander of their ship and, as a result, receive an upgraded ship in the game.

34. In 2019, Plaintiff's WORLD OF WARSHIPS BLITZ game was given the People's Choice award at the Mobile Games Awards.  The Mobile Games

Awards is a yearly celebration of the greatest games and developers around the world given by the readers of PocketGamer.com, a leading website that focuses on mobile, portable, and handheld games.

35.    The WORLD OF WARSHIPS BLITZ game is the subject of substantial publicity, including descriptions, reviews, and discussions of, and news about, the game on a global basis, including in the United States.

36.    Plaintiff's trademarks WORLD OF TANKS BLITZ, WORLD OF WARSHIPS BLITZ, and BLITZ have acquired secondary meaning in the United States and worldwide, and are instantly recognizable and associated by the relevant consumers in the United States with Plaintiff and its mobile video MMO game products with a military theme.

## ASSOCIATION OF BLITZ ALONE WITH PLAINTIFF

37.    As a result of the extensive use and exposure of Plaintiff's trademarks WORLD OF TANKS BLITZ and WORLD OF WARSHIPS BLITZ to the relevant public in the United States, and in particular the exposure of the relevant public to the use of the name BLITZ both as a unique characteristic of the trademarks and as a standalone distinctive mark used for Plaintiff's relevant business, the name BLITZ has come to be associated in the mind of the relevant public with Plaintiff and its MMO mobile action video game business and mobile video game products with a military theme.  This has led to Plaintiff acquiring significant international goodwill in the name BLITZ in connection with its relevant MMO mobile action video game business and mobile video game products with a military theme, which goodwill extends to the United States.

38.    Consumers of Plaintiff's games often abbreviate and use the name BLITZ as a standalone reference to Plaintiff's relevant video games.  Plaintiff facilitates this association by, for example, operating a game forum website called "Won Blitz" where consumers can post their reviews and comments about Plaintiff's BLITZ games.

39.     The name BLITZ has been used extensively by Plaintiff and its "Blitz Team" throughout the last 5 years, in the course of marketing campaigns, in connection with merchandise related to Plaintiff's games, and in promotional videos, events, interviews, and other material published online in a wide range of platforms and websites.  WORLD OF TANKS BLITZ merchandise featured the name BLITZ alone to identify Plaintiff's games.  The Blitz Twister Cup promotional event described above made extensive use of the name BLITZ as the distinctive name for Plaintiff's relevant video games.

40.     Given the success and reputation acquired by Plaintiff's WORLD OF TANKS BLITZ and WORLD OF WARSHIPS BLITZ games, Plaintiff is currently in the process of developing additional BLITZ video games with a military theme.

41.     Plaintiff advertises, promotes, and markets its BLITZ games together such that Plaintiff owns a family of BLITZ trademarks

42.     Plaintiff owns the following federally registered trademarks containing the term BLITZ, and owns common law rights in the term BLITZ alone (collectively "Plaintiff's BLITZ Marks"):

| **Mark** | **Reg. No.** | **Class and Goods/Services** | **Reg. Date** |
|---|---|---|---|
| WORLD OF TANKS BLITZ | 4,590,703 | Class 9:  Computer games software; computer game discs; video games software; computer game software for video games and for games machines; computer programs for video and computer games; video discs featuring strategy games relating to armed conflict; optical discs featuring strategy games relating to armed conflict; audio tapes featuring strategy games relating to armed conflict; prerecorded video cassettes featuring strategy games relating to armed | August 26, 2014 |

| Mark | Reg. No. | Class and Goods/Services | Reg. Date |
|------|----------|--------------------------|-----------|
|      |          | conflict; compact discs featuring strategy games relating to armed conflict; blank CD-ROMs for sound or video recording; data bearing record carriers for computers, namely, prerecorded magnetic data carriers featuring strategy games relating to armed conflict; musical sound recordings; video recordings featuring strategy games relating to armed conflict; computer game software for playing video, computer and on-line games; software for enabling video, computer and on-line games to be run on multiple platforms; downloadable software for developing, designing, modifying and customizing video, computer and on-line games; computer game software for use on mobile phones; downloadable electronic publications in the nature of newsletters, journals, magazines and guidebooks in the field of strategy games relating to armed conflict; software for enhancing and developing video games; structural parts and fittings for all the aforesaid goods |          |
|      |          | Class 41:  Entertainment provided via the Internet, namely, providing on-line massively multi-player video games; on-line gaming services, namely, providing on-line massively multi-player war games; entertainment services, namely, providing on-line massively multi-player computer games; organizing online multi-player computer games, namely, matching players of online |          |

| Mark | Reg. No. | Class and Goods/Services | Reg. Date |
|---|---|---|---|
| | | computer games against each other; on-line entertainment services in the nature of on-line computer game tournaments and leagues; entertainment services in the nature of on-line computer game tournaments and leagues; providing a web-based system and on-line portal for customers to participate in virtual on-line gaming tournaments and leagues, operation and coordination of virtual on-line gaming tournaments and leagues; entertainment services, namely, production and distribution of games shows; providing on-line information in the field of computer gaming entertainment; providing on-line computer games accessed via wireless communication; providing on-line computer games accessed via cellular telephones; providing on-line non-downloadable electronic publications in the nature of newsletters, journals, magazines and guidebooks in the field of strategy games relating to armed conflict | |
| WORLD OF WARSHIPS BLITZ | 5,809,262 | Class 9:  Computer games software; computer games discs; video games cartridges; computer software for playing video games or for operating games machines; computer programs for playing video and computer games; video discs, discs, magnetic tapes, cassettes, compact discs all in the field of strategy and action games relating to armed conflict; blank CD-ROMs for sound or video recordings, data bearing record | July 23, 2019 |

| Mark | Reg. No. | Class and Goods/Services | Reg. Date |
|------|----------|--------------------------|-----------|
| | | carriers for computers, all having game software recorded thereon, all in the field of strategy and action games relating to armed conflict; sound recordings and video recordings in the field of strategy and action games relating to armed conflict; software for playing video, computer and on-line games; software for enabling video, computer and on-line games to be run on multiple platforms; downloadable software for developing, designing, modifying and customizing video, computer and on-line games; games software for mobile phones; computer game software for use on mobile phones; downloadable electronic publications in the nature of newsletters, journals, magazines and guidebooks in the field of strategy and action games relating to armed conflict provided on-line from database for the Internet; video games enhancers, namely, high performance computer hardware with specialized features for enhanced game playing ability; structural parts and fittings for all the aforesaid goods <br><br> Class 41:  Entertainment provided via the Internet, namely, providing online massively multi-player video games; on-line gaming services, namely, providing online massively multi-player video games; providing on-line computer games, multi-player matching services for computer game tournaments, and on- | |

| Mark | Reg. No. | Class and Goods/Services | Reg. Date |
|------|----------|--------------------------|-----------|
|      |          | line entertainment in the nature of online computer game tournaments, virtual or cyber sports leagues relating to armed conflict video games, production and distribution of games shows; providing on-line information in the field of computer gaming entertainment; providing online non-downloadable games by cellular telephone communication; providing online non-downloadable games by or for use on cellular telephones; providing on-line non-downloadable electronic publications in the nature of newsletters, journals, magazines and guidebooks in the field of strategy and action games relating to armed conflict |  |

True and correct copies of certificates of registration for Plaintiff's federally registered trademarks, which are valid and subsisting, are attached hereto as **Exhibit C**.

### DEFENDANTS AND THEIR INFRINGING ACTIONS

43.     On information and belief, Defendants are using the marks BLITZ TEAM, BLITZ TEAM, and BLITZ ENGINE (collectively the "BLITZ TEAM Marks") in conjunction with goods and services offered in the video game industry, including in the United States, all without Plaintiff's approval, license, or consent.

44.     On or about May 2018, Plaintiff received notice for the first time of Defendants' company in Belarus, and of Defendants' efforts to develop and release a new action mobile video game with a military theme in the global market.

45.     On information and belief, Blitz Team operates a website on the URL www.blitzteam.com (the "Blitz Team Website") which use the BLITZ TEAM Marks.

46.     Defendants registered BLITZ TEAM, BLITZ TEAM & Design, and BLITZ ENGINE in Belarus as national trademarks, which then served as the basis for the subsequent filing by Defendants of the following three International BLITZ trademark applications:  IR 1475283 BLITZ TEAM in Class 42; IR 1474692 BLITZ TEAM & Design in Class 42; and IR 1478842 BLITZ ENGINE in Class 9. The International applications were filed with the World Intellectual Property Office ("WIPO") under the Madrid Protocol and were extended to the U.S. and to other jurisdictions.

47.     Plaintiff immediately took steps and is currently in the process of taking further legal steps in Belarus and in other jurisdictions worldwide to oppose Defendants' trademark applications or, as the case may be, to cancel the resulting registrations on the basis of Plaintiff's prior rights in its well-known trademarks WORLD OF TANK BLITZ, WORLD OF WARSHIPS BLITZ, and BLITZ.

## DEFENDANTS' PRIOR EMPLOYMENT WITH PLAINTIFF

48.     Plaintiff has reasonable grounds to believe that Blitz Team was set up by former employees of Plaintiff, who focused on the development of the WORLD OF TANKS BLITZ game when working for Plaintiff.  Attached hereto as **Exhibit D** is a true and correct copy of a letter from the Ministry of Justice of the Republic of Belarus attaching an extract from the Republic of Belarus' Unified State Register of Legal Entities and Individual Entrepreneurs as of October 4, 2018.  The extract supplied by the Belarus authorities shows that Blitz Team was formed and is owned by Kleshchenko Viktor Konstantinovich and Polyakov Kirill Nikolaevich, and that the entity was formed on April 28, 2018.  Before leaving their employment with JLLC GameStream (a company within the Wargaming Group), Mr. Kleschenko was Lead Tools Developer and Mr. Polyakov was the Product Manager for the WORLD OF TANKS BLITZ game.  Mr. Polyakov quit his employment by JLLC GameStream on April 27, 2018, the day before Blitz Team was formed.

49.     Plaintiff has reasonable grounds to suspect that that Defendants,

1   through their agents and employees, improperly encouraged, induced, or solicited
2   more than thirty employees of Plaintiff to join Blitz Team, such former employees
3   being part of Plaintiff's own "Blitz Team" referred to in Paragraph 2 above.  These
4   suspicions are supported, amongst others, by various posts by numerous former
5   employees of Plaintiff on their respective social media profiles, such as Facebook
6   and LinkedIn, reflecting that they were employed with Plaintiff and are now
7   employed by Blitz Team.  For example, the Facebook profile of former employee
8   UX Designer Artem Mazurkevich (Артём Мазуркевич) states that he was an
9   employee of the Wargaming Global Team from December 2015 until October
10  2018, at which time he became employed at "Blitz Team" as a UX Expert.  Also,
11  Volha Mamul's (Ольга Мамуль) profile reveals that she is an employee of Blitz
12  Team while in the past she worked as a Project Manager for Plaintiff.

13          50.     Plaintiff's "Blitz Team" was formed in approximately 2013 in
14  connection with an agreement known as the Transfer of Rights & Future
15  Cooperation Agreement ("TRFCA"), a true and correct copy of which is attached
16  hereto as **Exhibit E**.  By that agreement, Mr. Karpiuk, Mr. Baradouski, Mr. Drozd,
17  and Mr. Babraunichy conveyed certain software to Plaintiff, and agreed to work on
18  the WORLD OF TANKS BLITZ game for Plaintiff.  The agreement also required
19  Plaintiff to employ Mr. Kleschenko and Mr. Polyakov as "Key Personnel" for the
20  development of the WORLD OF TANKS BLITZ game.

21          51.     Plaintiff has paid the DAVA Individuals in excess of US $10,000,000
22  under the TRFCA.

23          52.     The TRFCA required the DAVA Individuals to enter into "Non-
24  Compete and Non-Solicitation Agreements."  Attached hereto as **Exhibit F** are true
25  and correct copies of the executed Non-Compete and Non-Solicitation Agreements.

26          53.     Section 2.1 of the Non-Competition and Non-Solicitation Agreements
27  obligates the DAVA Individuals not to "personally or through others encourage,
28  induce, attempt to induce, solicit or attempt to solicit (on [their] own behalf or on

behalf of any other person or entity), or take any other action which is intended to induce or encourage, or has the effect of inducing or encouraging, any employee of the Wargaming Group to leave his or her employment with the Wargaming Group to engage in a Prohibited Activity with [the DAVA Individuals]." The DAVA Individuals were obligated not to solicit Plaintiff's employees "commencing on the Effective Date and ending on the one (1)-year anniversary of the Employment Termination." The "Effective Date" is defined as the date of the execution of the TRFCA (August 27, 2013).

54.     Section 1.2 of the Non-Competition and Non-Solicitation Agreements defines "Prohibited Activity" to include:  "(a) [to] participate or engage, anywhere in the Restricted Territory, in any business (including research and development), operations, activities and/or services, that are or involve the creation, design, development, modification, marketing, licensing, sale or other distribution of (1) any Multiplayer Online Battle Arena (MOBA) electronic or video games, massively multiplayer online games, multi- and single player electronic and video games (whether for gaming consoles, PCs, hand-held devices, including tablets, mobile and cell phone devices, or any other electronic platforms), where any such games feature the use of tanks, warplanes, battleships, helicopters, or robots, or (2) games that are based in significant part on elements substantially similar to those in the Game and/or [WOTB] (as defined in the  [TRFCA]), and/or any other electronic and video games that are currently are [sic] planned and/or being developed by Wargaming Group, without regard to [the DAVA Individuals'] actual involvement into the development of such ) ('Competing Business Purpose');  (b) be or become an officer, director, stockholder, owner, Affiliate, salesperson, co-owner, partner, trustee, promoter, technician, engineer, analyst, employee, agent, representative, supplier, contractor, consultant, advisor or manager of or to, or otherwise acquire or hold any interest in, or participate in or facilitate the financing, operation, management or control of, or otherwise assist any firm, partnership, corporation,

person, entity or business that engages or participates in a Competing Business Purpose in the Restricted Territory."

55.     Over the course of the six months after the DAVA Individuals left Plaintiff's employ, from May 2018 to October 2018, thirty-four (34) employees left Plaintiff and joined Defendants.  The bulk of the improper hires occurred in May 2018 (the same month the DAVA Individuals left Plaintiff), when twenty-three (23) members of Plaintiff's mobile development team joined Defendants.

56.     Plaintiff is informed and believes that the DAVA Individuals, as well as others working in concert with the DAVA Individuals, contacted Plaintiff employees on behalf of Defendants.

57.     On February 20, 2018, Mr. Baradouski told one of Plaintiff's employees that the DAVA Individuals planned to leave Plaintiff to start a new company, and asked the employee to join their new company.  Mr. Baradouski instructed the employee to keep the departure plan secret, and revealed that only eight people knew about the departure plan.  The eight people included the DAVA Individuals, as well as Mr. Polyakov and Mr. Kleschenko, who are the two former employees that formed Blitz Team LLC less than two months later.  At the time of the conversation, the DAVA Individuals, Mr. Polyakov and Mr. Kleschenko were employed by Plaintiff.

58.     Around that same time, Mr. Karpiuk separately met with another of Plaintiff's employees and, on information and belief, revealed the departure plan. Plaintiff's employee later left his employment, and joined Defendants at Blitz Team LLC.

59.     The selection of the name BLITZ by Defendants, as well as the filing by Defendants of the trademark applications identified in Paragraphs 46 and 72 were made deliberately, in bad faith, and for the sole purpose of taking unfair advantage of the reputation and goodwill of Plaintiff's well-known BLITZ Marks.

60.     Plaintiff suspects that the game which Defendants developed may also

1   infringe other intellectual property rights belonging exclusively to Plaintiff and in

2   particular rights to copyrights related to the WORLD OF TANKS BLITZ and/or

3   WORLD OF WARSHIPS BLITZ games.

4        61.    The Higher Court of the Republic of Belarus is considering five

5   lawsuits filed by Plaintiff against the former employees of JLLC GameStream who

6   have left JLLC GameStream to work for Defendants.  In these lawsuits, Plaintiff

7   claims that these individuals illegally published and communicated to the public the

8   source code of the technology owned by Plaintiff, namely, the DAVA Framework

9   (aka DAVA Engine).  Plaintiff intends to amend this Complaint to add a copyright

10  claim after additional proof is obtained.

11       62.    Since December 12, 2018, the Ministry of Antimonopoly Regulation

12  and Trade of Belarus has been considering JLLC GameStream's application about

13  Defendants' violation of antimonopoly legislation in the form of unfair

14  competition.

15       63.    Like WORLD OF TANKS BLITZ and WORLD OF WARSHIPS

16  BLITZ video games Defendants' first video game, BATTLE PRIME, is a free-to-

17  play multiplayer shooter with a military theme.  On information and belief, the

18  battles in Defendants' BATTLE PRIME video game last approximately five

19  minutes.  In each game, two teams of up to six players must face each other in a

20  virtual world, where the goal is to earn points and move up the leaderboard by

21  destroying as many enemies as possible.  Every time a player destroys an enemy, he

22  earns points.  Players play with "primes," i.e., universal war avatars with unique

23  attack abilities.  Every prime has its own tactics and characteristics.  Each time the

24  player joins a new battle or rejoins a battle after the player's avatar is killed, the

25  player switches to another one of the player's prime avatars.

26       64.    As with Plaintiff's WORLD OF TANKS BLITZ and WORLD OF

27  WARSHIPS BLITZ video games, Defendants' BATTLE PRIME game is available

28  for download via Google Play (for Android devices) and App Store (for Apple iOS

devices).  BATTLE PRIME's total worldwide revenue is $183,694, and the single largest source of revenue was $70,023 from the United States.  As such, Defendants' BATTLE PRIME game is advertised and marketed to the same public as the one targeted by Plaintiff for its own BLITZ video games.

65.    Plaintiff suspects that Defendants used the DAVA Framework (aka DAVA Engine) source code while developing Defendants' BATTLE PRIME game. Plaintiff, through its affiliate JLLC GameStream, has made numerous requests to Defendants to provide it with the computer code of the BATTLE PRIME game for the purpose of its comparison by experts in order to ascertain if it includes any part of the computer code of the DAVA Framework.  So far, Defendants have failed to respond to JLLC GameStream's requests.

66.    On July 19, 2019, Defendants' U.S. attorneys, located in this District, addressed a letter to Plaintiff, informing it of their clients' intention to release to market a test version of their BATTLE PRIME mobile game.  The letter alleged, amongst other things, that the BATTLE PRIME game would not infringe Plaintiff's copyright and warned Plaintiff not to unlawfully interfere with their clients' contractual or business relationships.  Defendants' counsel also alleged and explained the reasons why, in their opinion, the overall elements of the BATTLE PRIME game software are noticeably distinct from the WORLD OF TANKS BLITZ software and invited Plaintiff's U.S. attorneys to contact them should they have any intellectual property concerns about the BATTLE PRIME game.  A true and correct copy of Defendants' July 19, 2019 letter to Plaintiff is attached hereto as **Exhibit G.**

67.    On August 6, 2019, Plaintiff's U.S. attorneys replied, denying any allegations to the effect that Plaintiff acted unreasonably in defending its legal and intellectual property rights in Belarus or anywhere else and making it clear that Plaintiff's concerns are not limited to the potential claim for copyright infringement on the part of Defendants, but also to misappropriation of other intellectual property

rights of Plaintiff, including Plaintiff's BLITZ Marks.  With this letter, it was also made clear to Defendants' lawyers that Plaintiff did not authorize Defendants' use of BLITZ TEAM or BLITZ GAME or the use of the name of BLITZ, and Plaintiff demanded that Defendants cease use of the BLITZ mark.  A true and correct copy of Plaintiff's August 6, 2019 letter to Defendants is attached hereto as **Exhibit H.**

68.    On December 11, 2019, Defendants responded to Plaintiff's August 6, 2019 letter.  Defendants denied Plaintiff's requests, and denied that Defendants have wrongfully solicitated or induced former employees of Plaintiff to join Blitz Team.

69.    Defendants have not ceased their unlawful activities and continue to infringe and otherwise violate Plaintiff's BLITZ Marks.

70.    On December 11, 2019, Defendants proceeded with the launch and release of the final version of the BATTLE PRIME video game app in the United States and worldwide, which can be downloaded and played by consumers in the United States and worldwide on Android and iOS mobile devices.

71.    Defendants' BATTLE PRIME game and related apps on Google Play and Apple App Store, as well as Defendants' own websites (www.battleprime.com and www.blitzteam.com), are directed to end users in the United States, and they all make use of the name BLITZ, either as part of Defendants' corporate name Blitz Team or as part of the trademarks BLITZ TEAM, BLITZ ENGINE, **BLITZ TEAM** , and **B BLITZ ENGINE** .  Attached hereto as **Exhibit I** are true and correct copies of screenshots and extracts from Google Play, the Apple App Store, Defendants' websites www.battleprime.com and www.blitzteam.com, and www.battleprime.com's "Terms of Use" "Privacy Policy," all showing Defendants' unauthorized use of the BLITZ mark and corporate name in the United States. Specifically, www.battleprime.com's Terms of Use states:

> **For United States residents**, these Terms of Use contain a

binding arbitration clause in Section 8 and a class-action waiver that affects your rights about how to resolve disputes. **If you live in the United States**, please read it carefully. Except where you opt out, and except for certain types of disputes described in Section 8, you agree that any disputes arising between you and Blitz Team will be resolved by binding, individual arbitration and you waive your right to participate in any class-action lawsuit or class-wide arbitration.

. . .

   8.  Dispute Resolution and Governing Law

If a dispute arises between you and BLITZ TEAM, we you shall first contact us directly to seek a resolution by going to our customer support site at https://blitzteam.helpshift.com/a/battle-prime/  You agree to exhaust all reasonable resolution efforts with the BLITZ TEAM before seeking dispute resolution elsewhere.  **If you are a resident of the United States of America**, these Terms of Use and any unresolved material dispute arising out of or related to it or Privacy Policy or the Service shall be governed in all respects by the laws of the state of New York, without regard to conflicts of law provisions.  You agree that any unresolved material claim or dispute that you may have against us must be resolved exclusively by a court located in Manhattan, New York.  If you are not a resident of the United States, you agree that all unresolved material disputes between you and us shall be governed by the laws of Belarus without regard to conflict of law provisions.  You agree that any unresolved material claim or dispute you may have against us may be resolved exclusively by a court located in Minsk, Belarus.

**If you are a United States resident or otherwise make any claim against us in the United States**, you expressly agree that any legal claim, dispute or other controversy between you and BLITZ TEAM arising out of or otherwise relating in any way to Services, including controversies relating to the applicability, enforceability or validity of any provision of these Terms of Use or our Privacy Policy (collectively "Disputes"), shall be resolved in confidential binding arbitration conducted before one commercial arbitrator from the American Arbitration Association ("AAA"), rather than in a court, as described

herein.  The arbitration will be governed by the AAA's commercial arbitration rules and, if the arbitrator deems them applicable, the supplementary procedures for consumer related disputes (collectively "Rules and Procedures").  You acknowledge that you are voluntarily and knowingly forfeiting your right to a trial by jury and to otherwise proceed in a lawsuit in state or federal court.

(Emphasis added.)

72.     Defendants have also filed, through their International applications with the WIPO, the following applications to register the BLITZ TEAM Marks with the U.S. Patent and Trademark Office ("PTO"):

| **Mark** | **Ser. No. Filing Date** | **Class and Services** |
|---|---|---|
| BLITZ TEAM | 79/262,236<br><br>March 11, 2019<br><br>Priority Date based on International Application<br><br>Nov. 12, 2018 | Class 42:  Scientific and technological services and research and design relating thereto; industrial analysis and industrial research services; design and development of computer hardware and software; water analysis; computer system analysis; handwriting analysis [graphology]; chemical analysis; energy auditing; architectural services; recovery of computer data; interior design; industrial design; graphic arts design; oil-field surveys; geological surveys; engineering; computer virus protection services; installation of computer software; meteorological information; material testing; textile testing; bacteriological research; biological research; geological research; research in the field of environmental protection; cosmetic research; mechanical research; chemical research; research and development of new products for others; scientific research; analysis for oil-field exploitation; underwater exploration; technical research; calibration [measuring]; web site design consultancy; computer security |

| Mark | Ser. No. Filing Date | Class and Services |
|------|----------------------|--------------------|
|  |  | consultancy; information technology [IT] consultancy; consultancy in the design and development of computer hardware; architectural consultancy; Internet security consultancy; computer software consultancy; data security consultancy; technological consultancy; oil-well testing; quality control; vehicle roadworthiness testing; land surveying; dress designing; updating of computer software; monitoring of computer systems to detect breakdowns; monitoring of computer systems for detecting unauthorized access or data breach; monitoring of computer systems by remote access; software as a service [SaaS]; maintenance of computer software; authenticating works of art; design of interior decor; quality evaluation of standing timber; quality evaluation of wool; digitization of documents [scanning]; conversion of data or documents from physical to electronic media; urban planning; providing information on computer technology and programming via a web site / providing information on computer technology and programming via a website; provision of scientific information, advice and consultancy in relation to carbon offsetting; providing search engines for the Internet; conversion of computer programs and data, other than physical conversion; conducting technical project studies; computer system design; rental of web servers; computer rental; rental of computer software; unlocking of mobile phones; geological prospecting; oil prospecting; hosting computer sites [web sites]; server hosting; construction drafting; cloud seeding; consultancy in the field of energy-saving; creating and designing website-based indexes of information for others [information |

| Mark | Ser. No. Filing Date | Class and Services |
|------|----------------------|--------------------|
| | | technology services]; creating and maintaining web sites for others; computer programming; technical writing; duplication of computer programs; cloud computing; chemistry services; outsource service providers in the field of information technology; packaging design; off-site data backup; computer technology consultancy; telecommunications technology consultancy; scientific laboratory services; weather forecasting; styling [industrial design]; cartography services; data encryption services; research in the field of physics; electronic data storage; surveying; electronic monitoring of credit card activity to detect fraud via the Internet; electronic monitoring of personally identifying information to detect identity theft via the Internet |
| BLITZ TEAM | 79/261,988<br><br>March 11, 2019<br><br>Priority Date based on International Application<br><br>Nov. 12, 2018 | Class 42:  Scientific and technological services and research and design relating thereto; industrial analysis and industrial research services; design and development of computer hardware and software; water analysis; computer system analysis; handwriting analysis [graphology]; chemical analysis; energy auditing; architectural services; recovery of computer data; interior design; industrial design; graphic arts design; oil-field surveys; geological surveys; engineering; computer virus protection services; installation of computer software; meteorological information; material testing; textile testing; bacteriological research; biological research; geological research; research in the field of environmental protection; cosmetic research; mechanical research; chemical research; research and development of new products for |

| Mark | Ser. No.<br>Filing Date | Class and Services |
|------|-------------------------|--------------------|
|      |                         | others; scientific research; analysis for oil-field exploitation; underwater exploration; technical research; calibration [measuring]; web site design consultancy; computer security consultancy; information technology [IT] consultancy; consultancy in the design and development of computer hardware; architectural consultancy; Internet security consultancy; computer software consultancy; data security consultancy; technological consultancy; oil-well testing; quality control; vehicle roadworthiness testing; land surveying; dress designing; updating of computer software; monitoring of computer systems to detect breakdowns; monitoring of computer systems for detecting unauthorized access or data breach; monitoring of computer systems by remote access; software as a service [SaaS]; maintenance of computer software; authenticating works of art; design of interior decor; quality evaluation of standing timber; quality evaluation of wool; digitization of documents [scanning]; conversion of data or documents from physical to electronic media; urban planning; providing information on computer technology and programming via a web site / providing information on computer technology and programming via a website; provision of scientific information, advice and consultancy in relation to carbon offsetting; providing search engines for the Internet; conversion of computer programs and data, other than physical conversion; conducting technical project studies; computer system design; rental of web servers; computer rental; rental of computer software; unlocking of mobile phones; geological prospecting; oil prospecting; hosting computer sites [web sites]; |

| Mark | Ser. No.<br>Filing Date | Class and Services |
|---|---|---|
|  |  | server hosting; construction drafting; cloud seeding; consultancy in the field of energy-saving; creating and designing website-based indexes of information for others [information technology services]; creating and maintaining web sites for others; computer programming; technical writing; duplication of computer programs; cloud computing; chemistry services; outsource service providers in the field of information technology; packaging design; off-site data backup; computer technology consultancy; telecommunications technology consultancy; scientific laboratory services; weather forecasting; styling [industrial design]; cartography services; data encryption services; research in the field of physics; electronic data storage; surveying; electronic monitoring of credit card activity to detect fraud via the Internet; electronic monitoring of personally identifying information to detect identity theft via the Internet |
| BLITZ ENGINE | 79/263,707<br><br>March 11, 2019<br><br>Priority Date based on International Application<br><br>Nov. 23, 2018 | Class 9:  Scientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signalling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus and instruments for conducting, switching, transforming, accumulating, regulating or controlling electricity; apparatus and instruments for recording, transmitting, reproducing sound or images; magnetic data media, sound recording discs; compact discs, DVDs and other digital recording media; mechanisms for coin-operated apparatus; cash registers, calculating devices, data processing equipment and computers; computer software; |

| Mark | Ser. No. Filing Date | Class and Services |
|------|----------------------|--------------------|
| | | fire-extinguishing apparatus; 3D spectacles; DVD players; ticket dispensers; coin-operated musical automata (juke boxes); fire engines; answering machines; electrical adapters; batteries for electronic cigarettes; accumulators, electric; accumulators, electric, for vehicles; accelerometers; actinometers; alidades; altimeters; ammeters; anemometers; anodes; antennas; anticathodes; apertometers [optics]; high-frequency apparatus; testing apparatus not for medical purposes; electro-dynamic apparatus for the remote control of railway points; remote control apparatus; electro-dynamic apparatus for the remote control of signals; monitoring apparatus, other than for medical purposes; Global Positioning System [GPS] apparatus; distillation apparatus for scientific purposes; diffraction apparatus [microscopy]; air analysis apparatus; apparatus to check stamping mail; sound transmitting apparatus; apparatus for fermentation [laboratory apparatus]; breathing apparatus for underwater swimming; breathing apparatus, except for artificial respiration; apparatus and installations for the production of X-rays, not for medical purposes; cash registers; electric apparatus for commutation; intercommunication apparatus; stills for laboratory experiments; projection apparatus; radiological apparatus for industrial purposes; X-ray apparatus not for medical purposes; blueprint apparatus; flashing lights [luminous signals]; stereoscopic apparatus; telephone apparatus; facsimile machines; phototelegraphy apparatus; igniting apparatus, electric, for igniting at a distance; acid hydrometers; salinometers; acidimeters for batteries; aerometers; beacons, luminous; accumulator |

| Mark | Ser. No. Filing Date | Class and Services |
|------|---------------------|--------------------|
| | | jars; barometers; anode batteries; galvanic batteries; batteries for lighting; solar batteries; solar panels for the production of electricity; batteries, electric; balances [steelyards]; betatrons; binoculars; biochips; electronic tags for goods; lens hoods; magnetic tape units for computers; computer memory devices; fire hose nozzles; encoded identification bracelets, magnetic; connected bracelets [measuring instruments]; safety tarpaulins; electronic key fobs being remote control apparatus; bullet-proof clothing; signalling buoys; life buoys; marking buoys; directional compasses; vacuum gauges; electrolysers; variometers; verniers; scales; baby scales; bathroom scales; letter scales; weighbridges; precision balances; scales with body mass analysers; levelling staffs [surveying instruments]; rods [surveying instruments]; camcorders; video baby monitors; video cassettes; video telephones; video screens; viewfinders, photographic; electric plugs; electric sockets; couplings, electric; micrometer screws for optical instruments; viscosimeters; circuit closers; wavemeters; voltmeters; mechanical signs; signs, luminous; switchboxes [electricity]; current rectifiers; gas testing instruments; gasometers [measuring instruments]; galvanometers; hands-free kits for telephones; heliographic apparatus; hygrometers; hydrometers; weights; peepholes [magnifying lenses] for doors; holograms; plotters; loudspeakers; sounding leads; plumb bobs; range finders; densimeters; densitometers; parts of optical goods; detectors; smoke detectors; infrared detectors; counterfeit [false] coin detectors; joysticks for use with computers, other than for video games; transparencies |

| Mark | Ser. No.<br>Filing Date | Class and Services |
|------|------------------------|--------------------|
|      |                        | [photography]; slide projectors; diaphragms [photography]; dictating machines; dynamometers; light-emitting diodes [LED]; floppy disks; disks, magnetic; optical discs; circular slide rules; disk drives for computers; juke boxes for computers; DNA chips; electronic interactive whiteboards; electronic notice boards; bullet-proof waistcoats; life jackets; reflective safety vests; identification threads for electric wires; nose clips for divers and swimmers; locks, electric; bells [warning devices]; alarm bells, electric; electric door bells; signal bells; audio interfaces; acoustic conduits; mirrors for inspecting work; road signs, luminous or mechanical; marine depth finders; probes for scientific purposes; buzzers; needles for surveying compasses; needles for record players; measures; pressure measuring apparatus; simulators for the steering and control of vehicles; inverters [electricity]; pressure indicators; temperature indicators; incubators for bacteria culture; cosmographic instruments; mathematical instruments; levelling instruments; instruments containing eyepieces; surveying instruments; azimuth instruments; interfaces for computers; ionization apparatus not for the treatment of air or water; spark-guards; coaxial cables; fibre optic cables; cables, electric; calipers; slide calipers; screw-tapping gauges; calorimeters; calculating machines; pocket calculators; decompression chambers; cinematographic cameras; thermal imaging cameras; mouth guards for sports; life-saving capsules for natural disasters; electronic pens [visual display units]; holders for electric coils; identity cards, magnetic; video game cartridges; toner cartridges, unfilled, for printers and |

| Mark | Ser. No.<br>Filing Date | Class and Services |
|------|-------------------------|--------------------|
| | | photocopiers; memory cards for video game machines; encoded magnetic cards; riding helmets; protective helmets; carriers for dark plates [photography]; automated teller machines [ATM]; cathodes; spools [photography]; choking coils [impedance]; coils, electric; electromagnetic coils; cinematographic film, exposed; computer keyboards; solenoid valves [electromagnetic switches]; wire connectors [electricity]; encoded key cards; electronic book readers; electronic agendas; push buttons for bells; magnetic encoders; anti-dazzle shades; collectors, electric; calibrating rings; smart rings; protective suits for aviators; commutators; compact discs [audio-video]; compact discs [read-only memory]; comparators; marine compasses; laptop computers; tablet computers; notebook computers; condensers [capacitors]; contacts, electric; wind socks for indicating wind direction; traffic cones; branch boxes [electricity]; distribution boxes [electricity]; junction boxes [electricity]; connectors [electricity]; accumulator boxes; cabinets for loudspeakers; diving suits; galena crystals [detectors]; reflecting discs for wear, for the prevention of traffic accidents; covers for electric outlets; logs [measuring instruments]; lasers, not for medical purposes; lactodensimeters; lactometers; vacuum tubes [radio]; darkroom lamps [photography]; thermionic tubes; amplifying tubes; flashlights [photography]; head cleaning tapes [recording]; magnetic tapes; videotapes; surveying chains; fire escapes; rulers [measuring instruments]; square rulers for measuring; slide-rules; contact lenses; correcting lenses [optics]; close-up |

| Mark | Ser. No.<br>Filing Date | Class and Services |
|------|-------------------------|--------------------|
|      |                         | lenses; optical lenses; optical condensers; sounding lines; electricity conduits; measuring spoons; magnifying glasses [optics]; thread counters; magnets; decorative magnets; crash test dummies; resuscitation mannequins [teaching apparatus]; mouse [computer peripheral]; manometers; security tokens [encryption devices]; divers' masks; solderers' helmets; protective masks; respiratory masks, other than for artificial respiration; materials for electricity mains [wires, cables]; voting machines; money counting and sorting machines; material testing instruments and machines; furniture especially made for laboratories; megaphones; portable media players; diaphragms [acoustics]; diaphragms for scientific apparatus; metal detectors for industrial or military purposes; digital weather stations; metronomes; rules [measuring instruments]; carpenters' rules; dressmakers' measures; mechanisms for coin-operated apparatus; mechanisms for counter-operated apparatus; coin-operated mechanisms for television sets; shutter releases [photography]; micrometers; microprocessors; microscopes; microtomes; microphones; audio mixers; modems; lightning rods; monitors [computer hardware]; monitors [computer programs]; selfie sticks [hand-held monopods]; terminals [electricity]; junction sleeves for electric cables; teeth protectors; temperature indicator labels, not for medical purposes; knee-pads for workers; headphones; surveyors' levels; sound recording carriers; optical data media; electronic sheet music, downloadable; computer software, recorded; sheaths for electric cables; identification sheaths for electric wires; weighing machines; computer |

| Mark | Ser. No.<br>Filing Date | Class and Services |
|------|-------------------------|--------------------|
| | | hardware; punched card machines for offices; lifesaving apparatus and equipment; shoes for protection against accidents, irradiation and fire; objectives [lenses] [optics]; lenses for astrophotography; egg-candlers; fire extinguishers; electrified fences; limiters [electricity]; clothing for protection against accidents, irradiation and fire; asbestos clothing for protection against fire; clothing especially made for laboratories; ozonisers [ozonators]; octants; eyepieces; ohmmeters; wrist rests for use with computers; eyeglass frames; frames for pince-nez; oscillographs; plumb lines; mirrors [optics]; eyeglasses; sunglasses; googles for sports; electronic collars to train animals; signalling panels, luminous or mechanical; radio pagers; pince-nez; electronic pocket translators; transmitters [telecommunication]; telephone transmitters; transmitters of electronic signals; switches, electric; periscopes; gloves for divers; gloves for protection against accidents; gloves for protection against X-rays for industrial purposes; asbestos gloves for protection against accidents; ovens for laboratory use; droppers for measuring, other than for medical or household purposes; pyrometers; planimeters; plane tables [surveying instruments]; plates for batteries; wafers for integrated circuits; printed circuit boards; compact disc players; cassette players; protective films adapted for computer screens; protective films adapted for smartphones; sound recording strips; X-ray films, exposed; films, exposed; life-saving rafts; laboratory trays; digital signs; semi-conductors; polarimeters; fire pumps; graduated glassware; life belts; fuses; circuit breakers; converters, electric; telerupters; food |

| Mark | Ser. No.<br>Filing Date | Class and Services |
|---|---|---|
| | | analysis apparatus; diagnostic apparatus, not for medical purposes; distance recording apparatus; distance measuring apparatus; speed measuring apparatus [photography]; apparatus for measuring the thickness of leather; apparatus for measuring the thickness of skins; speed checking apparatus for vehicles; time recording apparatus; apparatus and instruments for astronomy; navigational instruments; apparatus and instruments for physics; chemistry apparatus and instruments; measuring devices, electric; boiler control instruments; meteorological instruments; naval signalling apparatus; observation instruments; navigation apparatus for vehicles [on-board computers]; satellite navigational apparatus; regulating apparatus, electric; precision measuring apparatus; audio- and video-receivers; prisms [optics]; computer software applications, downloadable; printers for use with computers; hemline markers; retorts' stands; apparatus for changing record player needles; drainers for use in photography; cleaning apparatus for sound recording discs; fire beaters; sighting telescopes for firearms; test tubes; pressure indicator plugs for valves; magnetic wires; telegraph wires; telephone wires; wires, electric; conductors, electric; copper wire, insulated; fuse wire; computer programs, recorded; computer game software; computer programs, downloadable; computer operating programs, recorded; record players; processors [central processing units]; rods for water diviners; electronic publications, downloadable; distribution consoles [electricity]; control panels [electricity]; radar apparatus; baby monitors; masts for wireless aerials; transmitting sets [telecommunication]; |

| Mark | Ser. No. Filing Date | Class and Services |
|---|---|---|
| | | radios; vehicle radios; sprinkler systems for fire protection; frames for photographic transparencies; screens for photoengraving; flowmeters; walkie-talkies; voltage surge protectors; voltage regulators for vehicles; stage lighting regulators; light dimmers [regulators], electric; speed regulators for record players; reducers [electricity]; washing trays [photography]; marking gauges [joinery]; T-squares for measuring; time switches, automatic; relays, electric; safety restraints, other than for vehicle seats and sports equipment; X-ray photographs, other than for medical purposes; rheostats; respirators for filtering air; retorts; refractometers; refractors; grids for batteries; humanoid robots with artificial intelligence; speaking tubes; horns for loudspeakers; subwoofers; saccharometers; optical fibers [fibres] [light conducting filaments]; traffic-light apparatus [signalling devices]; dog whistles; signalling whistles; sextants; inductors [electricity]; safety nets; nets for protection against accidents; fire alarms; signals, luminous or mechanical; sirens; electronic access control systems for interlocking doors; scanners [data processing equipment]; integrated circuit cards [smart cards]; smartglasses; smartphones; smartwatches; connections for electric lines; couplings, electric; sonars; sound locating instruments; lighting ballasts; resistances, electric; spectrograph apparatus; spectroscopes; speed indicators; alcoholmeters; satellites for scientific purposes; protection devices for personal use against accidents; audiovisual teaching apparatus; radiotelegraphy sets; charging stations for electric vehicles; radiotelephony sets; spectacle lenses; anti-glare |

| Mark | Ser. No. Filing Date | Class and Services |
|---|---|---|
| | | glasses; optical glass; personal stereos; stereoscopes; stands for photographic apparatus; stroboscopes; fire boats; sulfitometers; bags adapted for laptops; drying racks [photography]; spherometers; integrated circuits; printed circuits; counters; parking meters; kilometer recorders for vehicles; revolution counters; abacuses; egg timers [sandglasses]; taximeters; ear plugs for divers; tachometers; television apparatus; telegraphs [apparatus]; telescopes; teleprompters; teleprinters; mobile telephones; cordless telephones; theodolites; interactive touch screen terminals; thermo-hygrometers; thermometers, not for medical purposes; thermostats; thermostats for vehicles; crucibles [laboratory]; tone arms for record players; totalizators; transistors [electronic]; transponders; protractors [measuring instruments]; transformers [electricity]; step-up transformers; vehicle breakdown warning triangles; triodes; starter cables for motors; discharge tubes, electric, other than for lighting; capillary tubes; neon signs; Pitot tubes; X-ray tubes not for medical purposes; telephone receivers; squares for measuring; gauges; quantity indicators; automatic indicators of low pressure in vehicle tires [tyres]; gasoline gauges; water level indicators; electric loss indicators; light-emitting electronic pointers; slope indicators; levels [instruments for determining the horizontal]; mercury levels; spirit levels; urinometers; amplifiers; particle accelerators; electric installations for the remote control of industrial operations; balancing apparatus; video recorders; invoicing machines; tape recorders; protection devices against X-rays, not for |

| **Mark** | **Ser. No.**<br>**Filing Date** | **Class and Services** |
|---|---|---|
| | | medical purposes; railway traffic safety appliances; data processing apparatus; oxygen transvasing apparatus; theft prevention installations, electric; film cutting apparatus; drying apparatus for photographic prints; optical character readers; centering apparatus for photographic transparencies; dosage dispensers; battery chargers; chargers for electric batteries; chargers for electronic cigarettes; sound alarms; sounding apparatus and machines; apparatus for editing cinematographic film; cathodic anti-corrosion apparatus; couplers [data processing equipment]; wearable activity trackers; anti-theft warning apparatus; computer peripheral devices; anti-interference devices [electricity]; demagnetizing apparatus for magnetic tapes; acoustic couplers; alarms; fog signals, non-explosive; whistle alarms; adding machines; readers [data processing equipment]; heat regulating apparatus; photocopiers [photographic, electrostatic, thermic]; electric and electronic effects units for musical instruments; bar code readers; downloadable ring tones for mobile phones; downloadable image files; downloadable music files; animated cartoons; filters for use in photography; filters for respiratory masks; filters for ultraviolet rays, for photography; USB flash drives; magic lanterns; optical lamps; signal lanterns; cameras [photography]; glazing apparatus for photographic prints; shutters [photography]; darkrooms [photography]; photometers; flash-bulbs [photography]; digital photo frames; enlarging apparatus [photography]; photovoltaic cells; containers for contact lenses; eyeglass cases; cases for smartphones; containers for |

| Mark | Ser. No. Filing Date | Class and Services |
|------|----------------------|--------------------|
| | | microscope slides; cases especially made for photographic apparatus and instruments; chromatography apparatus for laboratory use; chronographs [time recording apparatus]; laboratory centrifuges; eyeglass chains; cyclotrons; compasses for measuring; frequency meters; time clocks [time recording devices]; petri dishes; sleeves for laptops; covers for personal digital assistants [PDAs]; covers for tablet computers; covers for smartphones; fire blankets; chips [integrated circuits]; jigs [measuring instruments]; pedometers; meteorological balloons; electrified rails for mounting spot lights; asbestos screens for firemen; fire hose; virtual reality headsets; protective helmets for sports; head guards for sports; cell phone straps; eyeglass cords; tripods for cameras; switchboards; distribution boards [electricity]; equalizers [audio apparatus]; screens [photography]; workmen's protective face-shields; projection screens; radiology screens for industrial purposes; fluorescent screens; exposure meters [light meters]; ducts [electricity]; galvanic cells; epidiascopes; ergometers; armatures [electricity]; black boxes [data recorders] |

73. Defendants' use of, and applications to register, the BLITZ TEAM Marks are likely to cause consumers to mistakenly and erroneously believe that Defendants, their marks, and/or the goods and services offered thereunder have their source or origin with Plaintiff, are affiliated or connected with Plaintiff, or are endorsed or approved or licensed by Plaintiff.

**FIRST CAUSE OF ACTION**

**Trademark Infringement – Against all Defendants**

**(15 U.S.C. §§ 1114)**

74.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 73, above, as though fully set forth herein.

75.    Defendants have used in commerce, without Plaintiff's permission or authorization, Plaintiff's BLITZ Marks or marks confusingly similar thereto – specifically, the BLITZ TEAM Marks and the Blitz Team trade name – in a manner that is likely to cause confusion with respect to the source and origin of Defendants' goods and services and is likely to cause confusion or mistake and to deceive purchasers as to the source or origin of Defendants, their businesses, and/or their goods and services or as to Plaintiff's affiliation, connection, or association with, or approval or sponsorship of, Defendants, their businesses, and/or their goods and services.

76.    Defendants' acts constitute infringement of Plaintiff's BLITZ Marks in violation of 15 U.S.C. § 1114.

77.    As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill.  Defendants will continue to use, unless restrained, Plaintiff's BLITZ Marks or marks confusingly similar thereto, and will cause irreparable damage to Plaintiff.  Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Defendants and, as applicable, their officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

78.    Plaintiff is further entitled to recover from Defendants the actual damages that Plaintiff has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.

79.    Plaintiff is further entitled to recover from Defendants the gains,

profits, and advantages that Defendants have obtained as a result of their wrongful acts.

80.   Because of the willful nature of Defendants' wrongful acts, Plaintiff is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

81.   Pursuant to 15 U.S.C. § 1117, Plaintiff is also entitled to recover its costs of suit, and its attorneys' fees because this is an exceptional case.

### SECOND CAUSE OF ACTION

**False Designation of Origin and Association – Against all Defendants**

**(15 U.S.C. § 1125(a))**

82.   Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 81, above, as though fully set forth herein.

83.   Defendants' unauthorized use of Plaintiff's BLITZ Marks or marks confusingly similar thereto – specifically, the BLITZ TEAM Marks and the Blitz Team trade name – in conjunction with Defendants' businesses and their offering of goods and services in the video game industry, Defendants' false designation of origin, and Defendants' false and misleading descriptions and representations of fact, as alleged herein, are likely to cause confusion, or to cause mistake, or to deceive as to the source or origin of Defendants' products, services, or commercial activities or as to Plaintiff's affiliation, connection, or association with, or sponsorship or approval of, Defendant, Defendants' products, services, or commercial activities in violation of 15 U.S.C. § 1125(a).

84.   As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill.  Defendants will continue, unless restrained, to conduct their business and offer goods and services using Plaintiff's BLITZ Marks or other trademarks confusingly similar thereto and will cause irreparable damage to Plaintiff.  Plaintiff has no adequate remedy at law and is

1  entitled to an injunction restraining Defendants and, as applicable, their officers,

2  members, agents, servants, and employees, and all persons acting in concert with

3  them, from engaging in further acts of false designation of origin or association.

4         85.    Plaintiff is further entitled to recover from Defendants the actual

5  damages that Plaintiff has sustained, is sustaining, and/or is likely to sustain as a

6  result of Defendants' wrongful acts.  Plaintiff is presently unable to ascertain the

7  full extent of the monetary damages that it has suffered and/or is likely to sustain by

8  reason of Defendants' acts of false designation of origin or affiliation.

9         86.    Plaintiff is further entitled to recover from Defendants the gains,

10 profits, and advantages that Defendants have obtained as a result of their wrongful

11 acts.  Plaintiff is presently unable to ascertain the extent of the gains, profits, and

12 advantages that Defendants have realized by reason of their acts of false

13 designation of origin or affiliation.

14        87.    Because of the willful nature of Defendants' wrongful acts, Plaintiff is

15 entitled to an award of treble damages and increased profits pursuant to 15 U.S.C.

16 § 1117.

17        88.    Pursuant to 15 U.S.C. §1117, Plaintiff is also entitled to recover its

18 costs of suit, and its attorneys' fees because this is an exceptional case.

19                        **THIRD CAUSE OF ACTION**

20        **Trademark Infringement – Common Law – Against all Defendants**

21        89.     Plaintiff repeats and realleges each and every allegation of paragraphs

22 1 through 88, above, as though fully set forth herein.

23        90.    Defendants have used in commerce, without Plaintiff's permission or

24 authorization, Plaintiff's BLITZ Marks or marks confusingly similar thereto –

25 specifically, the BLITZ TEAM Marks and the Blitz Team trade name – in a manner

26 that is likely to cause confusion with respect to the source and origin of Defendants'

27 goods and services and is likely to cause confusion or mistake and to deceive

28 purchasers as to Plaintiff's affiliation, connection, or association with, or approval

or sponsorship of, Defendants, their businesses, and/or their goods or services.

91.   Defendants' acts constitute infringement of Plaintiff's BLITZ Marks in violation of the common law.

92.   As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill.  Defendants will continue to use, unless restrained, Plaintiff's BLITZ Marks or marks confusingly similar thereto, and will cause irreparable damage to Plaintiff.  Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Defendants and, as applicable, their officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

93.   Plaintiff is further entitled to recover from Defendants the actual damages that Plaintiff has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.

94.   Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.

95.   Because of the willful nature of Defendants' wrongful acts, Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

### Unfair Competition – Against all Defendants

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

96.   Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 95, above, as though fully set forth herein.

97.   By reason of the foregoing, Defendants have been, and are, engaged in "unlawful, unfair or fraudulent business practices" in violation of §§ 17200 *et seq.* of the California Bus. & Prof. Code.

98.   Defendants' acts complained of herein have injured and will continue

1  to injure Plaintiff irreparably.  Plaintiff has no adequate remedy at law for these

2  wrongs and injuries.  The injury to Plaintiff includes harm to Plaintiff's BLITZ

3  Marks, goodwill, and reputation in the marketplace that money cannot compensate.

4  Plaintiff is therefore entitled to:  (a) injunctive relief restraining and enjoining

5  Defendants and, as applicable, their officers, members, agents, servants, and

6  employees, and all persons acting thereunder, in concert with, or on their behalf,

7  from using Plaintiff's BLITZ Marks or any mark, name, symbol, or logo which is

8  confusingly similar thereto, in connection with the marketing or sale of any services

9  by Defendants; and (b) restitution of Defendants' profits earned from their

10  unauthorized use of Plaintiff's BLITZ Marks or any mark, name, symbol, or logo

11  which is confusingly similar thereto, in which profits Plaintiff has a vested interest.

12  <u>**FIFTH CAUSE OF ACTION**</u>

13  **Unfair Competition – Common Law – Against Defendants**

14  99.   Plaintiff repeats and realleges each and every allegation of paragraphs

15  1 through 98, above, as though fully set forth herein.

16  100.  Plaintiff invested substantial time and money in its development of

17  Plaintiff's BLITZ Marks.

18  101.  Defendants used Plaintiff's BLITZ Marks or marks confusingly similar

19  thereto – specifically, the BLITZ TEAM Marks and the Blitz Team trade name – to

20  build its business and/or pass off its business as that of Plaintiff's without Plaintiff's

21  authorization.

22  102.  Likewise, Defendants passed off its goods and services offered under

23  Plaintiff's BLITZ Marks or marks confusingly similar thereto – specifically, the

24  BLITZ TEAM Marks and the Blitz Team trade name – in a manner likely to cause

25  confusion as to the source of Defendants' goods or services or as to Plaintiff's

26  association or affiliation with, or sponsorship of, Defendants' goods and services.

27  103.  As a direct and proximate result of Defendants' wrongful acts, Plaintiff

28  has suffered and continues to suffer and/or is likely to suffer damage to its

trademarks, trade name, business reputation, and goodwill.  Defendants will continue, unless restrained, to pass off its business as that of Plaintiff's and to conduct their business and offer goods and services using Plaintiff's BLITZ Marks or other trademarks confusingly similar thereto and will cause irreparable damage to Plaintiff.   Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Defendants and, as applicable, their officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of unfair competition.

104.   Plaintiff is further entitled to recover from Defendants the actual damages that Plaintiff has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.  Plaintiff is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendants' acts of unfair competition.

105.   Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.  Plaintiff is presently unable to ascertain the extent of the gains, profits, and advantages that Defendants have realized by reason of their acts of unfair competition.

106.   Because of the willful nature of Defendants' wrongful acts, Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION

### Cancellation of Trademark Applications – Against all Defendants

### (15 U.S.C. § 1119)

107.   Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 106, above, as though fully set forth herein.

108.   Defendant's applications to register BLITZ TEAM (Ser. No. 79/262,236),  BLITZ TEAM  (Ser. No. 79/261,988), and BLITZ ENGINE (Ser. No. 79/263,707) so resemble Plaintiff's BLITZ Marks as to be likely, when used on or

1    in connection with the services identified in the applications, to cause confusion,

2    cause mistake, or deceive, in violation of 15 U.S.C. § 1052(d).  Defendants'

3    applications are also subject to cancellation ,in whole or in part, because

4    Defendants lacked the requisite bona fide intent to use each BLITZ TEAM Mark

5    for all or some of the identified goods and services stated in the applications as of

6    the filing date of the applications.

7        109.   Defendants' applications to register each of the BLITZ TEAM Marks

8    should be canceled pursuant to 15 U.S.C. §1119.

9                          **PRAYER FOR RELIEF**

10       WHEREFORE, Plaintiff prays that this Court enter judgment against

11   Defendants as follows:

12       1.    Finding that Defendants have:  infringed Plaintiff's BLITZ Marks

13   under 15 U.S.C. § 1114 and the common law; violated 15 U.S.C. § 1125(a);

14   violated Cal. Bus. & Prof. Code § 17200 by engaging in unlawful, unfair, and

15   fraudulent business practices; and committed unfair competition under the common

16   law;

17       2.    Ordering the cancellation of Blitz Team's applications to register

18   BLITZ TEAM (Ser. No. 79/262236), BLITZ TEAM (Ser. No. 79/261,988) and

19   BLITZ ENGINE (Ser. No. 79/263,707;

20       3.    Ordering that Defendants and, as applicable, their officers, agents,

21   servants, directors, employees, servants, partners, representatives, assigns,

22   successors, related companies, and attorneys and all persons in active concert or

23   participation with Defendants or with any of the foregoing be enjoined

24   preliminarily during the pendency of this action and permanently thereafter from:

25           a.    Manufacturing, transporting, promoting, importing, advertising,

26   publicizing, distributing, offering for sale, or selling any goods or services offered

27   under the BLITZ TEAM Marks, Plaintiff's BLITZ Marks, or any other mark, name,

28   symbol, or logo, which is likely to cause confusion or to cause mistake or to

1   deceive persons into the erroneous belief that any goods or services that Defendants

2   caused to enter the stream of commerce or any of Defendants' commercial

3   activities are sponsored or licensed by Plaintiff, are authorized by Plaintiff, or are

4   connected or affiliated in some way with Plaintiff, Plaintiff's BLITZ Marks, or the

5   goodwill associated therewith;

6        b.    Manufacturing, transporting, promoting, importing, advertising,

7   publicizing, distributing, offering for sale, or selling any goods or services offered

8   under the BLITZ TEAM Marks, Plaintiff's BLITZ Marks, or any other mark, name,

9   symbol, or logo that is a copy or colorable imitation of, incorporates, or is

10  confusingly similar to Plaintiff's BLITZ Marks;

11       c.    Implying Plaintiff's approval, endorsement, license, or

12  sponsorship of, or affiliation or connection with, Defendants' goods, services, or

13  commercial activities, passing off Defendants' business as that of Plaintiff, or

14  engaging in any act or series of acts which, either alone or in combination,

15  constitutes unfair methods of competition with Plaintiff and from otherwise

16  interfering with or injuring Plaintiff's BLITZ Marks or the goodwill associated

17  therewith;

18       d.    Representing or implying that Defendants are in any way

19  sponsored by, affiliated with, or licensed by Plaintiff;

20       e.    Using "Blitz Team LLC," Plaintiff's BLITZ Marks, or any other

21  mark, name, symbol, or logo that is a copy or colorable imitation of, incorporates,

22  or is confusingly similar to Plaintiff's BLITZ Marks, as a trade name.

23       f.    Knowingly assisting, inducing, aiding, or abetting any other

24  person or business entity in engaging in or performing any of the activities referred

25  to in paragraphs 3(a) to (e) above.

26      4.    Ordering that Plaintiff is the exclusive owner of Plaintiff's BLITZ

27  Marks and that such marks are valid and protectable;

28      5.    Ordering that Defendants be required to deliver to Plaintiff for

destruction any and all digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of their possession, custody, or control bearing the BLITZ TEAM Marks, the trade name Blitz Team, Plaintiff's BLITZ Marks, or any other mark, name, symbol, or logo that is a copy or colorable imitation of, incorporates, or is confusingly similar to Plaintiff's BLITZ Marks;

6.     Ordering the transfer of the domain name <www.blitzteam.com>, and any other domain names confusingly similar to Plaintiff's BLITZ Marks, to Plaintiff;

7.     Granting an award of damages suffered by Plaintiff according to proof at the time of trial;

8.     Ordering that Defendants account to Plaintiff for any and all profits earned as a result of Defendants' acts in violation of Plaintiff's rights under the Lanham Act and the common law;

9.     Granting an award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

10.     Ordering restitution of Defendants' profits earned from their unauthorized use of Plaintiff's BLITZ Marks or any mark, name, symbol, or logo which is confusingly similar thereto, in which profits Plaintiff has a vested interest, pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

11.     Granting an award of punitive damages for the willful and wanton nature of Defendants' aforesaid acts under the common law;

12.     For pre-judgment interest on any recovery by Plaintiff;

13.     Granting an award of Plaintiff's costs, expenses, and reasonable attorneys' fees; and

1       14.   Granting such other and further relief as is just and proper.

2                     Respectfully submitted,

3                     SHEPPARD MULLIN RICHTER & HAMPTON LLP

4

5   Dated:  March 25, 2020      By: /s/Jill M. Pietrini

6                     Jill M. Pietrini
                  Paul A. Bost

7                     Attorneys for Plaintiff
                  WARGAMING.NET LIMITED

8

9

10                 **JURY DEMAND**

11   Plaintiff demands a trial by jury of all issues triable by jury.

12                     Respectfully submitted,

13                     SHEPPARD MULLIN RICHTER & HAMPTON LLP

14

15   Dated:  March 25, 2020      By: /s/Jill M. Pietrini

16                     Jill M. Pietrini
                  Chris Ponder

17                     Paul A. Bost
                  Attorneys for Plaintiff

18                     WARGAMING.NET LIMITED

19   SMRH:4824-3812-1651