JS-6

FILED
CLERK, U.S. DISTRICT COURT

1/20/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARGAMING.NET LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>BLITZTEAM LLC a/k/a PRESS FIRE GAMES LLC and DOES 1–10,<br><br>Defendants. | Case No.: CV 20-02763-CJC(MRWx)<br><br><br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [Dkt. 35] |

**I. INTRODUCTION**

    Plaintiff Wargaming.net Limited brings this action for copyright and trademark infringement against Defendant Blitzteam LLC a/k/a Press Fire Games LLC and unnamed Does. Now before the Court is Defendant's motion to dismiss for lack of

personal jurisdiction. (Dkt. 35 [hereinafter "Mot."].) For the following reasons, Defendant's motion is **GRANTED**.[1]

## II. BACKGROUND

Plaintiff and Defendant are both foreign companies that create and distribute video games online and on mobile applications or "apps." (Dkt. 22 [First Amended Complaint, hereinafter "FAC"] ¶¶ 1, 8.) Plaintiff is a Cyprus company that has developed several video games including "World of Tanks Blitz" and "World of Warships Blitz." (*Id.* ¶¶ 14, 17, 30.) Plaintiff owns trademarks in both games and a copyright for the source code used to develop these games. (*Id.* ¶¶ 43, 120.) Plaintiff's games are available online, on gaming consoles, and through mobile app platforms like Google Play and Apple's App Store. (*Id.* ¶ 15.)

Defendant is a Belarusian company that Plaintiff alleges was created by Plaintiff's former employees in April 2018. (*Id.* ¶ 50.) Defendant, which was originally named Blitzteam LLC before changing its name to Press Fire Games LLC, developed a video game called "Battle Prime" that it distributes through its websites as well as Google's and Apple's app stores. (*Id.* ¶ 64.) Plaintiff alleges that Defendant developed Battle Prime using Plaintiff's copyrighted source code and that Defendant's use of the term "Blitz" infringed Plaintiff's trademarks. (*Id.* ¶ 120.) Defendant does not have any offices or employees in the United States, (Dkt. 35-1 [Declaration of Kiryl Paliakou, hereinafter "Paliakou Decl."] ¶¶ 4–6), and United States consumers have accounted for approximately ten percent of Defendant's total Battle Prime downloads, (*Id.* ¶ 9; Dkt. 42-10 [Opposition to Mot., hereinafter "Opp."] at 4).

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for February 1, 2021 at 1:30 p.m. is hereby vacated and off calendar.

Plaintiff's FAC alleges seven causes of action against Defendant for (1) trademark infringement, (2) false designation of origin and association, (3) common law trademark infringement, (4) violation of California's Unfair Competition Law, (5) common law unfair competition, (6) cancellation of Defendant's trademark applications, and (7) Copyright Infringement.  Before filing this case, Plaintiff filed seven other actions against Defendant or its members in Belarus and Cyprus.  (Paliakou Decl. ¶ 10; FAC ¶¶ 62–63.)  The suits filed in Belarus concern the allegedly unlawful use of Plaintiff's source code, (FAC ¶¶ 62–63), and the suit filed in Cyprus involves the trademarks at issue in this action, (Paliakou Decl. ¶ 10).

### III. LEGAL STANDARD

A party may move to dismiss an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by [] statute and if the exercise of that jurisdiction does not violate federal due process."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Plaintiff argues that personal jurisdiction over Defendant is authorized by Federal Rule of Civil Procedure 4(k)(2), also known as the federal long-arm statute.

Under Rule 4(k)(2), personal jurisdiction over a defendant is proper if three requirements are met: (1) "the claim against the defendant must arise under federal law"; (2) "the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction"; and (3) "the federal court's exercise of personal jurisdiction must comport with due process."  *Pebble Beach*, 453 F.3d at 1159.  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, [courts] consider contacts with the nation as a whole."  *Holland Am. Line*

*Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007). Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). The plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Id.* at 922.

The plaintiff's burden "varies according to the nature of the pre-trial proceedings in which the jurisdictional question is decided." *Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir. 1978). "Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608–09 (9th Cir. 2010). "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor." *Id.*; *see also Pebble Beach*, 453 F.3d 1154. However, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (per curiam).

**IV. DISCUSSION**

Plaintiff argues that personal jurisdiction over Defendant is authorized by Rule 4(k)(2), the federal long-arm statute. The Court disagrees because the exercise of personal jurisdiction over Defendant would not "comport with 'fair play and substantial justice.'" *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Under Rule 4(k)(2), personal jurisdiction over a defendant is proper if three requirements are met: (1) "the claim against the defendant must arise under federal law"; (2) "the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction"; and (3) "the federal court's exercise of personal jurisdiction must comport with due process." *Pebble Beach*, 453 F.3d at 1159. It is undisputed that the first two requirements are met as Plaintiff's claims arise under federal law and Defendant is not subject to the general jurisdiction of any state. (Mot. at 21; Opp. at 7.) Accordingly, the Court considers only whether its exercise of personal jurisdiction over Defendant would comport with due process. Under this analysis, personal jurisdiction may be either general or specific. *Id.* Because neither party contends that general jurisdiction exists, the Court considers whether Defendant's contacts with the United States give rise to specific jurisdiction.

"[F]or a court to have specific jurisdiction over a defendant, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). In tort cases like this one, the Ninth Circuit employs a three-part test for assessing whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction: (1) "the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* While Plaintiff has satisfied the first two

prongs, Defendant has presented a compelling case that the exercise of jurisdiction would be unreasonable. Accordingly, the Court declines to exercise personal jurisdiction over Defendant.

**A. Purposeful Direction**

Defendant purposefully directed its conduct at the United States. "In tort cases, [courts] typically inquire whether a defendant 'purposefully direct[ed] his activities' at the forum [], applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). To establish purposeful direction, a plaintiff must demonstrate that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum [], (3) causing harm that the defendant knows is likely to be suffered in the forum []." *Id.* Neither party disputes that Defendant committed an intentional act, so the Court analyzes only the second and third elements.

For the second element, Defendant expressly aimed its conduct at the United States. Express aiming occurs when a defendant has "continuously and deliberately exploited" a certain forum for its own commercial gain. *Mavrix*, 647 F.3d at 1230 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)) (noting that the *Keeton* Court allowed specific jurisdiction over Hustler Magazine, an Ohio corporation, when it was sued for libel by a New York citizen "in New Hampshire based on the circulation in New Hampshire of copies of the magazine that contained the allegedly libelous material")). The Ninth Circuit has also held that "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient" to establish personal jurisdiction. *Id.* at 1229.

Here, Defendant exploited the United States market for its commercial gain. Defendant chose to make its game, Battle Prime, available to the United States through Apple's and Google's app stores. *See Goes Int'l, AB v. Dodur Ltd.*, 2015 WL 5043296, at *10 (N.D. Cal. Aug. 26, 2015) ("It is significant that an infringing game is being distributed in a marketplace that includes U.S. players, even if the means for distribution is selecting the default of "worldwide" distribution."). More importantly, Plaintiff provides evidence that Defendant ran advertisements specifically targeted at the United States. These ads were not merely part of a general, international advertising campaign. Rather, from December 2019 through September 2020, Defendant purchased nine advertising campaigns through Facebook that specifically targeted United States' consumers, and these campaigns resulted in thousands of Battle Prime downloads in the United States. (Dkt. 42-5 [Exhibit J]); *see Mavrix*, 647 F.3d at 1230 (concluding that Defendant specifically targeted California when its website featured third-party advertisements that "targeted California residents" and finding it "immaterial whether the third-party advertisers or [defendant] targeted California residents").[2] Battle Prime has been downloaded nearly 300,000 times by United States consumers, which accounts for almost ten percent of its total downloads worldwide. Furthermore, Defendant's terms of service are the same for all customers except for United States residents. The terms require that any dispute involving a United States resident must be brought in "a court located in Manhattan, New York." (FAC ¶ 72); *see Quigley v. Guvera IP Pty Ltd.*, 2010 WL 5300867, at *4 (N.D. Cal. Dec. 20, 2010) (finding that "a California-specific privacy policy" favored personal jurisdiction over a defendant in California). Under these circumstances, the Court concludes that Defendant has deliberately exploited the United

---

[2] Defendant's general manager asserts that Defendant used Facebook to advertise internationally, not specifically to U.S. customers. (Dkt. 49-1 [Declaration of Kiryl Paliakou in Reply, hereinafter "Paliakou Reply Decl."] ¶¶ 2, 3.) But Plaintiff has presented Facebook records indicating that Defendant purchased advertising campaigns targeted solely at the United States while other campaigns were targeted at all countries or other specific regions. (Exhibit J.) Because "the court resolves all disputed facts in favor of the plaintiff," the Court finds that Defendant targeted certain advertising campaigns specifically at the United States. *See Pebble Beach*, 453 F.3d at 1154.

States for its own commercial gain. *See Mavrix*, 647 F.3d at 1230; *Blizzard Ent., Inc. v. Joyfun Inc Co., Ltd.*, 2020 WL 1972284, at *6 (C.D. Cal. Feb. 7, 2020) ("The Court finds that [defendant] purposefully availed itself of the privilege of conducting business in the United States by distributing the Infringing Game on platforms such as the Google Play store and Microsoft App store, selling virtual currency to American customers, and advertising the Infringing Game via platforms like Facebook."). Accordingly, Defendant purposefully directed its activity to this forum.

For the third element, Defendant's conduct aimed at the United States caused harm that Defendant knew was likely to be suffered here. "The economic loss caused by the intentional infringement of a plaintiff's [intellectual property] is foreseeable . . . in the forum where the infringement took place." *Mavrix,* 647 F.3d at 1231. Here, Plaintiff alleges that Defendant infringed its trademarks and copyrighted source code by distributing Battle Prime to consumers in the United States. Because hundreds of thousands of United States' consumers play Plaintiff's games, it was foreseeable that Defendant's infringement would cause Plaintiff to suffer "harm to its business reputation[,] goodwill, and [] business and profits" in this forum. *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 988 (9th Cir. 2009) (noting that "this element does not require that the 'brunt' of the harm be suffered in the forum"). Plaintiff has thus established that Defendant purposefully directed its activities at the United States.

### B. Plaintiff's Claims Arise Out of Conduct Aimed at U.S.

To determine whether a plaintiff's claims arise out of the defendant's forum-related conduct, the Ninth Circuit applies a "but for" causation test that is satisfied if the plaintiff would not have been injured "but for" the defendant's conduct directed toward the forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131 (9th Cir.

2003). Here, Defendant's conduct directed at the United States is a but-for cause of Plaintiff's claims. Plaintiff alleges that Defendant infringed Plaintiff's trademarks and copyrighted source code by distributing its game to United States' consumers. Consumers "in the U.S. would not have downloaded and played the Infringing Game *but for* [Defendant's] role in the distribution and marketing of the Infringing Game to users within the United States." *Blizzard Ent.*, 2020 WL 1972284, at *7. Accordingly, Plaintiff's infringement claims arise out of Defendant's conduct aimed at the United States.

### C. Reasonableness

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476. "[W]here a defendant who purposefully has directed his activities at [a forum] seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477. "In determining whether the exercise of jurisdiction over a nonresident defendant comports with 'fair play and substantial justice,' [the Court] must consider seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993). Five of these factors weigh against exercising personal jurisdiction over Defendant.

First, the extent of Defendant's purposeful interjection into the forum's affairs weighs in favor of exercising jurisdiction. Because this factor is "analogous to the purposeful direction analysis discussed above" and the Court concluded that Defendant purposefully directed activity at the United States, this factor favors the exercise of jurisdiction. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).

Second, the burden on Defendant weighs against exercising jurisdiction. The Supreme Court has recognized that defending a lawsuit in a foreign country can impose a substantial burden on a nonresident defendant. *Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*, 458 F. Supp. 3d 1202, 1212 (N.D. Cal. 2020) (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). Defendant is a Belarusian company with no offices or employees in the United States. (Paliakou Decl. ¶¶ 4–6.) However, because "modern advances in communications and transportation have significantly reduced the burden of litigating in another country" and Defendant has retained counsel based in California, this factor does not weigh heavily against the Court's jurisdiction. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002).

Third, the conflict with Belarus's sovereignty weighs against jurisdiction. The Ninth Circuit has held that when a "defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993) (citing *Asahi*, 480 U.S. at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.")). Plaintiff has already filed and lost five actions in Belarus related to infringement of its source code.

(Paliakou Decl. ¶ 10; Mot. at 23; FAC ¶¶ 62–63.)  The Court concludes that this factor weighs against its jurisdiction.

Fourth, the United States has little interest in adjudicating this suit.  Neither party is a United States citizen, and United States citizens are not being harmed by Defendant's alleged misconduct.  *Asahi*, 480 U.S. at 114 ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished."); *Good Job Games*, 458 F. Supp. 3d at 1213 (concluding that "California and the United States ha[d] little interest in adjudicating [the] suit" because "[t]he primary injured party [wa]s [the plaintiff], not California consumers").  This factor weighs against the exercise of jurisdiction.

Fifth, resolution of this dispute is not most efficient in a United States Court.  This factor primarily considers "where the witnesses and the evidence are likely to be located."  *Core-Vent*, 11 F.3d at 1489.  Because most, if not all, of the evidence and witnesses in this case are located overseas, this factor weighs against the Court's jurisdiction.  (*See* Paliakou Decl. ¶ 12.)

Sixth, the importance of the United States forum to Plaintiff's interest in convenient and effective relief is neutral in this case.  Plaintiff is a Cyprus company with its principal place of business in Cyprus, and Plaintiff has already filed several lawsuits related to this case in Cyprus and Belarus.  However, because Plaintiff has offices in the United States and it does significant business here as well, the Court concludes that this factor does not weight strongly in either direction.  (*See* FAC ¶ 7.)

Seventh, the availability of alternative forums weighs against the exercise of jurisdiction. Defendant contends that both Cyprus and Belarus are alternative forums capable of adjudicating U.S. copyright infringement disputes because both countries are

parties to the Berne Convention, which guarantees that holders of foreign copyrights are afforded the same protection as holders of domestic copyrights. *Fahmy v. Jay-Z*, 908 F.3d 383, 391 (9th Cir. 2018); *see Good Job Games*, 458 F. Supp. 3d at 1213 (finding alternate forums existed for Plaintiff's copyright claims when both parties were from countries that were "parties to the Berne Convention"). And Plaintiff has already filed lawsuits related to the infringement of its copyright and trademarks in both Belarus and Cyprus. (Paliakou Decl. ¶ 10.) "Plaintiff[] bear[s] the burden of proving the unavailability of an alternative forum," and it does not contend that these forums are unavailable here. *See Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 609 (9th Cir. 2018); (Opp. at 18.) This factor therefore weighs against the Court's exercise of jurisdiction.

Five of the seven reasonableness factors weigh against the Court's jurisdiction. Accordingly, the Court declines to exercise personal jurisdiction over Defendant because doing so would not "comport with fair play and substantial justice.'" *See Burger King*, 471 U.S. at 476; *see also Core-Vent*, 11 F.3d at 1490 (declining to exercise jurisdiction based on the reasonableness factors "where the plaintiff is an international corporation and where the defendants are individual citizens of a foreign country who lack connections to the United States and whose purposeful interjection into the forum state has been very limited").

///

///

///

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction is **GRANTED**.[3]

DATED: January 20, 2021

_____
HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff's pending applications to seal documents are **DENIED AS MOOT**, (*see* Dkts. 41, 44, 46), because the Court dismisses Plaintiff's claims pursuant to this order.